## PEOPLE v. FOURNIER.

### Crim. No. 203; February 26, 1897.

#### 47 Pac. 1014.

**Arson — Evidence — Cross-examination.—On a Trial for Arson,** Where the evidence is circumstantial, and a witness for the state testifies that she was awakened during the night by the smell as of burning rags, she may be asked on cross-examination whether there was not a great deal of rubbish in the back yard, near where the fire originated.

**Arson—Evidence.—Where the Fire was Seen in Rubbish** in a yard near the building burned, evidence that the rubbish was on fire in the same yard the day previous was admissible.

**Arson—Evidence.—Where a Suspicious Circumstance** in the evidence against defendant was the removal of certain goods from the burned building the day before the fire, it was error to exclude evidence of defendant explaining the removal.

**Arson—Evidence.—Where a Suspicious Circumstance** against defendant was that his building was insured, evidence that the building of a third person in which the fire started was also insured was admissible.

APPEAL from Superior Court, Madera County; W. M. Conley, Judge. ,

Joseph Marie Achille Fournier was convicted of destroying by fire a certain building with intent to defraud an insurance company, and appeals. Reversed.

Raleigh E. Rhodes and John R. Kittrell for appellant; W. F. Fitzgerald, attorney general, and C. N. Post for the people.

TEMPLE, J.—The defendant was charged, under section 548 of the Penal Code, with the offense of willfully destroying by fire a certain building, with the intent to defraud the Palatine Insurance Company, Limited, of Manchester, England, a corporation, in which company the property was then insured. A fire occurred in the town of Madera on the 27th of July, 1895, in which several buildings were consumed, one of which belonged to the defendant, and was insured for the sum of $600. The witnesses all agreed that the fire commenced either in the building occupied by the Tribune newspaper, between which and the defendant's building there was a space of eight feet, or somewhere along the line of a fence running northerly from the rear of the Tribune building some twenty feet to a shed adjacent to the dwelling occupied by the defendant and his wife. The defendant did not own the land upon which the building was, but occupied the same under a lease, and had built a small wooden house on the southeast corner of the lot, which he occupied as a saloon. On the rear of the lot, and some forty feet from the saloon, northerly, was the dwelling spoken of. Some of the witnesses—and apparently those who were first at the fire—testified that when first discovered by them it was immediately in the rear of the Tribune building, back of which was a little porch; others, that when they saw it it was upon the fence mentioned, and was spreading rapidly along the fence from the dwelling occupied by the defendant toward the Tribune building. The fence partly divided the lot occupied by the defendant from the lot upon which the Tribune building was situated. The evidence that the fire was of incendiary character, and tending to cast suspicion upon the defendant, was entirely circumstantial. That which tended to show that the fire was of an incendiary character,

aside from that which cast suspicion upon the defendant, was the testimony of some of the witnesses that the fire was proceeding along the fence from the dwelling of the defendant to the Tribune building rapidly, indicating that the fence might have been saturated with coal-oil, and that they perceived the odor of coal-oil.

The evidence which tended especially to raise a suspicion against the defendant was simply and only: (1) That he was a Frenchman, and had announced his intention of soon returning to France, and that he had an insurance upon the building, as stated. (2) On the very day of the fire he removed from the saloon to his dwelling a barrel of brandy and two cases of champagne. And (3) he and his wife were, shortly before the fire, sitting on the sidewalk by the saloon. The fire occurred shortly before midnight, and defendant and his wife claimed that they were both in bed at the time the alarm was given. The fire occurred in the middle of summer, and it appeared that in the rear of the printing office, which was first on fire, there was a great deal of rubbish, consisting of old rags, paper, straw, etc. A witness for the prosecution, who occupied one of the houses destroyed, testified that she was awakened during the night by mosquitoes, and immediately smelled fire, as of burning rags. She looked from her window, and saw the fire. She thought it was back of the Tribune office, nearer the office than the fence; and finally she stated that she was sure that it was under the porch, back of the Tribune building. On cross-examination the witness was asked as to the condition of the premises—whether there was anything on the ground in the shape of rubbish, paper or anything of the kind. The question was objected to as incompetent, immaterial and irrelevant, and not cross-examination, and the objection was sustained. On like objection the court refused to permit an answer to the question whether at other times she had not perceived the odor of coal-oil upon the premises, and the court also refused to permit the question whether, on the day before the fire, there had not been a pile of rubbish on fire, back of the Tribune office. These rulings were assigned as error here, and the attorney general hardly attempts a defense of them.

One question of interest at the trial was whether the fire ran along the fence from defendant's dwelling toward the

Tribune building, or was first discovered in the Tribune building, or immediately at the rear of it. The attention of the witness was first aroused by the smell of burning rubbish—rags. This first gave the alarm. The evidence was, therefore, quite material. The court sustained the objection to the existence of the burning rubbish on the 26th of July, on the ground that it was too remote in time. That was a question for the jury, and not for the court. No one would say that the time was so remote that it was absolutely impossible that a spark could be kept alive until the destruction of the building complained of. The ruling was clearly erroneous and injurious.

The court also erred in refusing to permit the defendant to show that the building owned by the witness Parsons was also insured. If the fact that the defendant's building was insured raised a presumption against him, it was competent to show that the person owning the building in which the fire first started had a like inducement to commit the crime.

A witness for the defendant (his wife) testified that the brandy and champagne were removed from the saloon because defendant expected certain persons who wished to buy the building and stock to inspect the same on the next day. Defendant offered to prove, in addition, the fact that two persons were expected to come upon that day, and did actually arrive upon the following day at Madera, pursuant to their appointment to inspect the building, with a view of making such purchase. The reason given why the removal was made under such circumstances was that whoever wished to buy the building and stock would want everything in sight thrown in, and would give no more for the property. The defendant should have been allowed to explain this act, which probably, more than any other, tended to cast suspicion upon him. It was for the jury to determine the truth and value of the explanation.

It is contended by the defense that the evidence was insufficient to justify the verdict, and it was certainly very weak. I doubt if an unprejudiced jury would have found a verdict of guilty upon it; but it is not necessary to reverse the case for that reason, as there are other sufficient grounds. Judgment and order reversed.

We concur: McFarland, J.; Henshaw, J.